UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN (GRAND RAPIDS)

IN THE MATTER OF:

James F. Wynn,

              Debtor.

_____ /

Bankruptcy Case No. 15-01621-jwb
Honorable James W. Boyd
Chapter 7

## TRUSTEE'S MOTION FOR AUTHORITY TO SELL PROPERTY OF THE BANKRUPTCY ESTATE PURSUANT TO 11 U.S.C. 363(b)

      Kelly M. Hagan, Trustee, by and through her counsel, Beadle Smith, PLC, hereby states for Trustee's Motion for Authority to Sell Property of the Bankruptcy Estate Pursuant to 11 U.S.C. 363(b)("Motion") as follows:

      1.      Kelly M. Hagan is the Chapter 7 Bankruptcy Trustee for the estate of James F. Wynn ("Debtor") in Bankruptcy case No. 15-01621-jwb filed in the United States Bankruptcy Court for the Western District of Michigan on March 22, 2015 ("Petition Date"), Kelly M. Hagan has been appointed the Chapter 7 Trustee and is charged with the duty to administer the assets of the Debtors's Estate consisting of real proper

      2.      On the Petition Date, Debtor held an interest as a tenant by the entirety with his wife, Candace Wynn or as a fee simple interest, in real property commonly known as 4861 Lake Grove, Petoskey, MI 49770 and more particularly described as real property located in the Township of Resort, Emmet County, State of Michigan, to wit:

Commencing at the South 1/4 corner of said Section 26; Thence North 89°23'24"W 330.50 feet along the south line of said Section 26 to the point of beginning; Thence continuing N89°23'24"W 991.50 feet; Thence N0°34'06"E 1325.71 feet to the south 1/8 line of said Section 26; Thence S89°21'46"E 991.50 feet along said 1/8 line; Thence S0°34'06"W 1325.24 feet to the point of beginning, being a part of Government Lot 2, Section 26, Town 34 North, Range 6 West;

and

Part of Gov't Lot 2, Section 26, T34N, R6W, Resort Township, Emmet County, MI; Commencing at the South 1/4 corner of said section 26 for the point beginning; Thence N89°23'24"W 330.50 feet along the South line of section 26; Thence N0°34'06"E 1325.24 feet to the South 1/8 line of

said section 26; Thence S89°21'46"E 330.50 feet along said south 1/8 line to the North and South 1/4 line of said section 26; Thence S0°34'06"W 1325.08 feet to the point of beginning.

and

Part of Government Lot 2, Section 26, Township 34 North, Range 6 West, Commencing at the South 1/4 corner of said Section 26; thence N89°23' 24" W 1,322.00 feet along the South line of said Section 26 to the point of beginning; Thence continuing N89°23' 24"W 315.53 feet to the easterly right of way line of Lake Grove Road; Thence 5°31' 54" W 653.46 feet along said road; Thence N 19° 5' 19" W 105.52 feet along said right of way line; Thence leaving said right of way line, N89° 32' 11" E 424.06 feet; Thence S 0° 34' 06" W 790.00 feet to the point of beginning; SUBJECT TO a country road right of way along the South side thereof

and

Part of Government Lot 2 Section 26, Township 34 North, Range 6 West, Commencing at the South 1/4 corner of said Section 26; Thence N 89°23'24" W 1322.00 feet along the South line of said Section 26; Thence N 0°34'06" E 790 feet to the point of beginning; Thence continuing N 0°34'06" E 535.71 feet to the South 1/8 line of said Section 26; Thence N 89°21'46" W 620.75 feet along said 1/8 line to the Easterly right of way line of Lake Grove Road; Thence S 19°32'52" E 281.78 feet along said right of way line; Thence S 19°05'19" E 296.80 feet along said right of way line; Thence leaving said right of way line N 89°32'11" E, 424.06 feet to the point of beginning; identified by parcel numbers 13-18-26-300-027, 13-18-26-300-033, 13-18-26-300-015 and 13-18-26-300-028 (the "Real Property").

3. After the Petition Date and pursuant to a Judgment of Divorce, Debtor obtained fee simple title to the Real Property which also became property of the bankruptcy estate pursuant to 11 U.S.C. 541.

4. The Real Property is subject to a first mortgage held by Wells Fargo Bank, N.A., as Trustee for the Pooling and Servicing Agreement dated as of October 1, 2004 Park Place Securities, Inc. Asset-Backed Pass-Through Certificates Series 2004-MHQ1 ("Wells Fargo") to secure an obligation owed by the Debtor having a balance of approximately $415,000.00. ("Mortgage").

5. The Wells Fargo Mortgage shall be paid in full at the closing on the sale of the Real Property.

6. The Real Property is subject to a lien in favor of the IRS to secure an obligation owed by the Debtor having a balance of approximately $108,217.04 ("IRS Lien").

7. The Trustee asserts that the value of the Real Property is less than the amount owed on the Mortgage and the IRS Lien.

8. The IRS agrees to have the Trustee sell the Real Property in an effort to avoid the foreclosure process and liquidate its interest in the Real Property.

9. Pursuant to 11 U.S.C. § 506(c), the Trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

10. In order to provide a benefit to the bankruptcy estate, the Trustee and IRS have entered into a surcharge agreement which provides for the following: The proceeds from the sale of the Real Property shall be distributed as follows:

   A. Payment of normal and customary closing costs incurred as a result of the sale of the Real Property including all tax prorations, transfer tax, document preparation and recording fees, utility prorations, title insurance and the like.

   B. Payment of the Mortgage in full and all liens and encumbrances against the Real Property having a greater priority than the IRS including the Mortgage;

   C. Payment of all approved fees, commissions and expenses of the broker/realtor employed by the estate to sell the Real Property not to exceed 6% of the gross sale price.

   D. Payment to the Internal Revenue Service of 50% of the gross sale proceeds after the deduction of the allowed payments set forth in subparagraphs A through C.

   E. Payment of the remaining gross sale proceeds after the payments set forth in subparagraphs A through D to the Bankruptcy Estate of James Wynn. This amount, along with the amounts set forth in paragraphs A through C above, shall be deemed the allowed surcharge as set forth in 11 U.S.C. §506(c).

11. Upon the payment to the IRS, consistent with this Motion, all tax liens filed by the IRS against the Real Property only shall be discharged.

12. To provide a benefit to creditors, it is necessary that the Real Property be sold in the administration of this Chapter 7 proceeding.

13. The Trustee has hired Coldwell Banker Schmidt Realtors/Bob Simpson ("Real Estate Agent") to assist the Trustee in selling the property with a commission of 6%.

14. The Trustee has accepted an offer for the Real Property in the amount of $540,000.00 pursuant to the Buy and Sell Agreement attached hereto as Exhibit A. This sale price is within the range of value determined by the Realtor and the Trustee believes that this is a fair price. The Real Property has been on the market for almost a year. The Trustee has received other offers, however, these offers have fallen through during the inspection period. The Trustee believes that given the condition of the Real Property, this is a fair offer.

15. The Trustee seeks approval for the payment of ordinary closing costs including transfer taxes, title insurance premium, prorated real property taxes and water bills etc.

16. IRS consents to the sale as proposed herein and has agreed to a surcharge of its collateral as set forth above. The Real Property is also subject to a lien for real property taxes which will be paid at closing.

17. The transfer of the Property will be "as is, where is".

18. The sale is subject to bankruptcy court approval and any better offers submitted to the Bankruptcy Court up until the deadline to object to this sale. Better offers may be submitted to Kevin M. Smith, attorney for the bankruptcy estate by mail or email at ksmith@bbssplc.com. In the event that there are competing bidders, the Trustee will establish bidding procedures to obtain the highest purchase price.

19. The Trustee believes that a sale of the Real Property are in the best interest of the estate and creditors.

**WHEREFORE**, the Trustee requests this Honorable Court enter the Order submitted herewith granting the Trustee authority to sell the Real Property for the sum of at least

$540,000.00, for waiver of the fourteen-day stay period set forth in Federal Rules of Bankruptcy Procedure, Rule, 6004(h), and for such other and further relief this Court deems just and proper.

                Respectfully submitted,

                BEADLE SMITH, PLC

                /S/ Kevin M. Smith
                By: Kevin M. Smith (P48976)
                Attorneys for Trustee
                445 South Livernois, Suite 305
                Rochester Hills, MI 48307
                (248) 650-6094, Ext. 15; (248) 650-6095 (fax)
Dated: 2/13/18         Ksmith@bbssplc.com

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2




# PURCHASE AGREEMENT
EMMET ASSOCIATION OF REALTORS – STANDARD FORM

Date January 5, 2018

**1.** The undersigned, Anthony Jabbour or entity to be named and _____ (the Buyer) offers to buy through Selling Realtor, Pat Leavy - Kidd & Leavy, and Listing Realtor, Bob Simpson - Coldwell Banker, the following Property located in the City/Twp. of Resort, County of Emmet, Michigan, commonly known as (Address) 4861 Lake Grove, Petoskey, MI 49770 and legally described as:
Parcels: 13-18-26-300-027, 13-18-26-300-033, 13-18-26-300-015, 13-18-26-300-028

_____, subject to any existing building and use restrictions, zoning ordinances and easements of record for the sum of $ 505,000.

**2.** All of Seller's mineral rights and all improvements, fixtures and appurtenances now in or on the Property are included in the purchase price, including the following: TV antennas and satellite dishes, tacked down carpeting, lighting fixtures and shades, all window treatments, screens and storm windows and doors, built-in kitchen appliances, awnings, mailbox, all plantings, fences;
Additional Included Items: All appliances including washer and dryer, exercise equipment and moose head in barn
Cello and case in basement

Excepted Items: _____

**3. TERMS.** The terms of purchase shall be as indicated by an "X" below (other unmarked terms shall not apply): Payment of such money shall be made in cash, cashier's check, or bank money order.

☒ **CASH** — The full purchase price at closing upon delivery of a Warranty Deed.

☐ **NEW MORTGAGE** — The full purchase price at closing upon delivery of a Warranty Deed, contingent upon Buyer's ability to obtain 1) conditional approval within seven days of the date of final acceptance of this Agreement, and 2) an unconditional commitment for a conventional, FHA or _____ (other) mortgage loan acceptable to Buyer on or before _____. If Buyer cannot obtain either the pre-approval or the unconditional commitment within the time periods allowed, either party may terminate this Agreement by delivering written notice of termination to the other party within the same time period. This Agreement shall then become null and void and the earnest money deposit shall be returned to Buyer. If neither party terminates this Agreement within the time allowed, the financing contingency shall be deemed waived. For the purposes of this Agreement, a commitment will not be considered conditional if it contains requirements that can only be fulfilled at closing, such as Buyer's execution of the loan documents or delivery of a paid insurance binder.

☐ **LAND CONTRACT** — $_____ at closing and execution of a Land Contract calling for the balance of $_____ payable in _____ installments of $_____ or more including interest at _____% per annum, interest to start on the date of closing and the first installment to become due _____ days after closing. The Land Contract shall be paid in full within _____ years from the date of closing. ☐ Land Contract Rider attached.

**4. OTHER PROVISIONS:**
* Buyer to have up to 21 days due diligence period. At Buyer's sole discretion if they are unsatisfied during this due diligence, the contract will be null and void and the earnest money will be returned to the Buyer.

Closing and occupancy to occur within 30 days after due diligence is complete.
Seller to have all personal property not included in the deal removed from the house and barn prior to closing.

_____ and/or see Addendum attached hereto.

**5. CONDITION OF PROPERTY.** Buyer has examined the Property and agrees to accept same in its present "AS IS" condition except as may be specified herein and agrees that there are no other or additional written or oral understandings. Buyer and Seller are aware that a homeowner's warranty policy is available; a Realtor may receive a referral fee from the warranty company. If the parties agree herein, Buyer may obtain and pay the cost of soil borings, surveys, use permits, land evaluation for on-site septic system, wetlands or environmental determinations or other permits, approvals or testing. Seller shall be responsible for obtaining any necessary land division approvals prior to closing. Seller shall remove all of Seller's personal property and any excluded items from the Property prior to the delivery of possession.

Initials: Buyer: [signed] —DS
Seller: _____

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

Page 2 – Continuation of Purchase Agreement: Wynn  (Seller)/ Jabbour  (Buyer), Date: 1-5-18

**6. CHECK THE FOLLOWING WHICH APPLY:**
- **AGENCY:** Buyer and Seller each acknowledges receipt of an Agency Disclosure Form. The Selling Realtor is acting as ☐ Agent/Subagent of Seller; ☒ Buyer's Agent; ☐ Dual Agent; or ☐ Other: _____.
- **CONDOMINIUM:** ☐ The Property is a condominium unit. See attached Condominium Rider.
- **INSPECTION CONTINGENCY:** ☐ Buyer declines inspection contingency. ☒ This offer is contingent upon satisfactory inspection of the Property, at Buyer's expense, by a licensed contractor and/or inspector of Buyer's choice no later than  See #4  days after final acceptance hereof. If Buyer is not satisfied with the results of the inspection, upon receipt of written notice delivered to Seller or Seller's agent within the same time period, this Agreement shall become null and void and the earnest money deposit shall be returned to Buyer. If Buyer does not terminate the Agreement within the time allowed, the inspection contingency shall be deemed waived.
- **LAND DIVISION:** ☐ Land Division Form attached, or Buyer to receive _____ divisions. If an entire parent parcel is being sold, it is assumed that all future divisions are included; if a parent parcel is being divided, and if a number of divisions being assigned to Buyer is not indicated above, it is assumed that none are transferred to Buyer.
- **LEAD BASED PAINT:** Buyer acknowledges receipt of the Lead Based Paint booklet and Disclosure on the Property:
☒ Yes; ☐ No; or ☐ N/A. If no required Lead Based Paint Disclosure is available from Seller, this Agreement does not become binding until Buyer has received a copy of the same.
- **SELLER'S DISCLOSURE STATEMENT:** Buyer acknowledges receipt of the Seller's Disclosure Statement on the above Property, and Buyer has read and signed it: ☒ Yes; ☐ No; or ☐ N/A.

**7. TITLE.** Prior to closing Seller shall provide to Buyer a commitment for an Owner's Title Policy with standard exceptions showing marketable title in the amount of the purchase price. The Buyer may pay the additional cost to obtain extended coverage or coverage without standard exceptions. Buyer shall have 10 days upon receipt of the commitment (and copies of any recorded documents referred to) to object to Seller in writing to any material defect in the title. If timely objection to title is made, Seller shall have 30 days from the date Seller is notified in writing of the particular title defect claimed to remedy the defect. If Seller remedies the title defect within the 30 days, the parties agree to close the sale within 5 days of written notification thereof. If Seller is unable to remedy the title defect within the 30 days, Buyer may require the return of the deposit in full termination of this Agreement.

**8. INSURANCE.** Seller shall be responsible for fire and extended coverage insurance until sale is closed.

**9. ADJUSTMENTS & COSTS.** Rent, insurance if assigned, interest on any existing land contract, mortgage or other lien assumed by the Buyer, shall all be adjusted to the date of closing of the sale. Any costs or fees resulting from Buyer's financing (including any mortgage closing fee) shall be the responsibility of Buyer. Other closing fees charged by the title company shall be shared equally by Buyer and Seller. Buyer shall reimburse Seller at closing for any heating oil or gas remaining on the Property as of the day of closing and at Seller's cost. Seller shall be responsible for paying the State and County transfer taxes.

**10. ASSESSMENTS** which become a lien on the Property by the date of closing (including the installments that have become due on assessments payable in installments) shall be paid by Seller. Taxes billed in the year or years before closing shall be paid by Seller. Taxes billed or to be billed in the year of closing shall be prorated on a calendar year basis so that Seller shall be charged with taxes from the first of the year to the closing date, and Buyer charged with taxes for balance of year. If official bills for taxes prorated hereunder are not yet issued, taxes will be estimated by multiplying the Taxable Value by the latest available millage rate, taking into consideration the Personal Residence Exemption if applicable.

**11. CLOSING. Sale shall be closed within 7 days after all necessary closing documents and any necessary loan documents are ready, or by  See #4 , whichever is earlier.**

**12. POSSESSION.** ☒ Buyer shall be given possession of the Property upon closing; or, ☐ see attached Possession Rider.

**13. NON-DISCRIMINATION.** As required by law, Seller and Realtor agree not to discriminate because of religion, race, creed, color, national origin, sex, familial status, age, height, weight, or physical or mental disability in the sale of this Property.

**14. EXISTING MORTGAGE.** Seller understands that consummation of the sale or transfer of the property described in this agreement shall not relieve the Seller of any liability that Seller may have under the mortgage(s) to which the property is subject, unless otherwise agreed to by the lender and Buyer or as required by law or regulation.

**15. EFFECT.** This Agreement shall be binding upon and shall benefit the heirs, successors and/or assigns of the parties. This Agreement may not be assigned by either party without the prior, written consent of the other party. Offers, counter-offers acceptances and notices can be delivered by fax or can be scanned and delivered by e-mail to the parties or their agents. Timely performance is an essential element of this Agreement. This Agreement may be amended, and any time limits may be extended, by written consent of the parties. Until all contingencies are met or waived, Seller may continue to market the property for sale. This Agreement may be signed in counterpart.

**16. DEPOSIT.** Buyer herewith deposits $ 25,000  with  Title Company , escrowee, evidencing Buyer's good faith, said deposit to be held by escrowee and applied to the purchase price at closing. If this offer is not accepted, or if this Agreement is terminated according to its terms, this deposit shall be refunded in full termination of this Agreement. In the event of default by Buyer all deposits made hereunder may be forfeited as liquidated damages at Seller's election, or Seller may retain such deposits as part payment of the purchase price and pursue its legal or equitable remedies against Buyer. In the event

Initials: Buyer: _____
Seller: _____

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

Page 3 – Continuation of Purchase Agreement: __Wynn__ (Seller)/__Jabbour__ (Buyer), Date: __1-5-18__

of default by Seller, Buyer may, at its option, elect to enforce the terms hereof, or demand, and be entitled to, an immediate refund of its entire deposit in full termination of this Agreement. In the event the Buyer and the Seller both claim the deposit, the deposit shall remain in the escrowee's trust account until a civil action has determined to whom the deposit must be paid, until the Buyer and the Seller have agreed in writing to the disposition of the deposit, or until the escrowee commences a civil action to interplead the deposit with the proper court.

17. This offer shall, unless withdrawn earlier, remain open until 5:00 p.m. EST/EDT on __1-10-18__.

Dated: __1/5/2018__
Buyer's Address: _____

Buyer:
X __Anthony Jabbour__ (DocuSigned)

X _____

Fax: _____

Phone: _____

Deposit monies received from Buyer in the form of _____ by: _____
Salesman/Realtor _____

18. THE ABOVE AGREEMENT IS HEREBY ACCEPTED SUBJECT TO THE FOLLOWING: __See Attached Addendum__

_____ and/or see addendum attached hereto.

19. Any counter-offer shall, unless withdrawn earlier, remain open until 5:00 p.m. EST/EDT on _____.
20. Seller acknowledges receipt of a copy of this Agreement.

Dated: __1/12/18__
Seller's Address: _____

Seller:
X __[signature]__

X _____

Fax: _____

Phone: _____

21. Buyer acknowledges receipt of Seller's acceptance of Buyer's offer. In the event the acceptance was subject to changes as hereinbefore set forth, as in Paragraph 18 above, the Buyer agrees to accept said changes, all other terms and conditions remaining unchanged.

Buyer:
X __[signature: Anthony]__

Dated: __1/13/2018__

X _____

NOTICE: ALL PARTIES SHOULD HAVE THIS TRANSACTION REVIEWED BY AN ATTORNEY.
NOTICE: THIS STANDARD FORM IS PROVIDED BY THE EMMET ASSOCIATION OF REALTORS. IT IS THE DUTY OF THE SELLING AGENT TO INFORM THE LISTING AGENT OF ANY CHANGES MADE TO THE STANDARD FORM.
NOTICE: THE PARTIES ACKNOWLEDGE THAT THEY HAVE NOT RELIED UPON ANY REPRESENTATIONS OF THE REALTORS REGARDING THE TYPE OF CONSTRUCTION OR PHYSICAL CONDITION OF THE PROPERTY.

SELLING REALTOR PHONE No.: _____ FAX No.: _____
LISTING REALTOR PHONE No.: _____ FAX No.: _____

Initials: Buyer: _____
Seller: _____

Page 3

# ADDENDUM TO PURCHASE AGREEMENT

This addendum shall be made part of the Purchase Agreement dated January 5, 2018 for real property commonly known as 4861 Lake Grove, Petoskey, MI. To the extent that this Addendum conflicts with the terms contained in the Purchase Agreement, the terms of this Addendum shall control.

1. The Sales Contract is subject to bankruptcy court approval and better offers received by the Trustee prior to Court approval of the subject offer.

2. Seller makes no representations, warranties, express or implied, and expressly disclaims the warranties of merchantability and fitness for a particular purpose regarding the Property. The subject Property is being sold as is where is.

3. Conveyance of the Property shall be made by a Trustee's Deed.

4. Closing shall be within 45 days of obtaining bankruptcy court approval of the sale or April 30, 2018, whichever is earlier. However, if the Trustee fails to obtain bankruptcy court approval by April 30, 2018, then the Purchase Agreement shall become null and void.

5. The Purchase Price shall be ~~$540,000~~ $540,000  AJ

6. The sale does not include any personal property that has not become a fixture of the real estate.

7. In the event if a material default in the Purchase Agreement by Seller, Buyer shall be entitled to the immediate return of his deposit as his sole and exclusive remedy.

8. Closing is subject to removal of the personal property of occupant, James Wynn, to Buyer's satisfaction which will not be unreasonably withheld.

9. Closing is subject to the Seller obtaining a carve out and release of lien from the Internal Revenue Service satisfactory to Seller.

10. Disputes regarding this contract shall be heard by the U.S. Bankruptcy Court for the Western District of Michigan.

Buyer:

_/s/ Anthony Jabbour_    Dated: 1/13/2018

Anthony Jabbour

Seller:

Kelly M. Hagan, Trustee

By: _____          Dated: 2/12/18
Kevin M. Smith on behalf of Kelly
M. Hagan, Trustee

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

## Purchase Agreement Addendum

| Seller: *Wynn* | Buyer: *Jabbour* |
|---|---|

Property: 4861 Lake Grove, Petoskey, MI 49770

This Addendum is attached to a Purchase Agreement between Seller and Buyer about the sale and purchase of the Property. The terms of this Addendum are a part of the terms of the Purchase Agreement. If the terms of this Addendum are not the same as the terms of the Purchase Agreement, the terms of this Addendum will control.

1. **Legal Advice.** Seller and Buyer each acknowledge that (a) they have been advised to obtain a lawyer to provide any legal advice about the sale and purchase of the Property and (b) they have not relied upon and each disclaim any legal advice that has been provided by any real estate broker or real estate salesperson about the Purchase Agreement or about the sale and purchase of the Property.

2. **Condition of the Property.** Buyer acknowledges that Buyer has (a) been advised to obtain an inspection and a survey of the Property and (b) Buyer has not relied upon and Buyer disclaims the advice of any real estate broker or real estate salesperson who has said not to obtain an inspection or a survey of the Property or who has provided any information about the the Property that could be obtained from an inspection of the Property. This means without limitation that Buyer will not rely upon the advice or any representations or warranties or other statements that have been made by any real estate broker or any real estate salesperson about any water or septic systems, the physical condition of any improvements to the Property, or the location of any boundary lines or building setbacks or encroachments.

3. **No Representations.** Buyer acknowledges that Buyer will rely upon Buyer's own investigations about the physical, environmental, economic use, legal compliance, or legal or other condition of the Property and that Buyer is not now relying, will not later rely upon, and completely waives and disclaims any representations or warranties by any real estate broker or any real estate salesperson about the Property, including any representation or warranty about the quality, condition, or use of the Property, about the title to the Property, about the absence from the Property of any flooding, defects, or hazardous or toxic substances, about whether the Property complies with all laws or regulations including those relating to health, safety, or the environment, or about whether the Property will be exempt from certain property taxes as Buyer's principal residence.

4. **Real Estate Agency Disclosures.** Seller and Buyer have each received from their respective real estate broker or real estate salesperson, as the case may be, a Disclosure Regarding Real Estate Agency Relationships, that has been signed by their respective real estate agent. Seller and Buyer have each reviewed these Disclosures and Seller and Buyer have each signed their respective Disclosures. Seller and Buyer each acknowledge and agree that the terms of this Addendum are material to the performance by any real estate broker, real estate salesperson, or any employee or agent of Crossroads Title of their respective obligations to Seller and Buyer.

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

SELLER:  BUYER:

_____  DocuSigned by:
_____
C0618D44FF494E3...

Date: 1/12/18  Date: 1/5/2018

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

# Emmet County GIS





Map Produced Using the Emmet County Internet Mapping Portal

0　190　380　760 Feet
1 inch = 376 feet



Author: Web User
Date: 4/24/2017

DocuSign Envelope ID: 53438F43-1260-460B-B82B-5A1E7D4FC9B2

Legals:

PROPERTY A

COM 330.5 FT W OF S 1/4 COR OF SEC FOR POB, TH CONT W 991.5 FT, N 1325.71 FT, E 991.5 FT, S 1325.24 FT TO POB, PT GOVT LOT 2, 30 AC M/L SECTION 26, T34N, R6W.\

PROPERTY B

PT OF GOVT LOT 2, SECTION 26, COM AT S 1/4 COR OF SEC, TH N89°23'24"W 1322 FT ALG S LN OF SEC FOR POB, TH CONT N89°23'24"W 315.53 FT TO E LN OF LAKE GROVE RD, TH N5°31'54"W 653.46 FT ALG SD RD, TH N19°5'19"W 105.52 FT, TH N89°32'11"E 424.06 FT, TH S0°34'06"W 790 FT TO POB. EXC COM AT S 1/4 COR OF SEC, TH ALG S LN OF SEC, N89°28'39"W 1705.75 FT TO W LN OF LAKE GROVE RD, TH N7°03'22"W 749.51 FT, TH N55°29'53"E 68.41 FT TO E LN OF LAKE GROVE RD, TH ALG E LN OF SD RD S19°11'47"E 105.62 FT TO POB, TH N84°23'47"E 355 FT, TH S5°36'13"E 100 FT, TH S84°23'47"W 21 FT, TH S5°36'13"E 100 FT, TH S84°23'47"W 334 FT TO S E'LY LN OF SD RD, TH ALG E'LY LN OF SD RD, N5°36'13"W 200 FT TO POB. SUBJ TO RD R/O/W. SECTION 26, T34N, R6W.

PROPERTY C

PT OF GOVT LOT 2, COM 1322 FT W OF S 1/4 COR, TH N 790 FT TO POB, TH CONT N 535.71 FT TO S 1/8 LN, TH W 620.75 FT TO E LN OF LAKE GROVE RD, TH S19°32'52"E 281.78 FT, TH S19°5'19"E 296.8 FT ALG SD RD, TH E 424.06 FT TO POB. 6.48 AC. SECTION 26, T34N, R6W.

PROPERTY D

E 10 AC OF SE 1/4 OF SW 1/4, PT OF GOVT LOT 2, 10 AC SECTION 26, T34N, R6W.